IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EARL D. MOORE, III, | : |
| Plaintiff, | : |
| v. | : Civ. No. 14-991-RGA |
| LAMONT WRIGHT, et al., | : |
| Defendants. | : |

Earl D. Moore, III, James T. Vaughn Correctional Center, Smyrna, Delaware. *Pro Se* Plaintiff.

Ophelia Michelle Waters, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Lamont Wright and Stephen Brackett.

**MEMORANDUM OPINION**

February 24, 2017
Wilmington, Delaware

*/s/ Richard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Earl D. Moore, an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). When he commenced this action, Plaintiff was a pre-trial detainee housed at the Howard R. Young Correctional Institution in Wilmington, Delaware. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. Defendants Lamont Wright and Stephen Brackett move to dismiss or, in the alternative, for summary judgment.[1] (D.I. 28). Briefing is complete.

## PROCEDURAL AND FACTUAL BACKGROUND

The Complaint alleges that on July 3, 2014, Wright maced Plaintiff through a door flap for the actions of another inmate. (D.I. 3). Plaintiff alleges that the next day, Brackett saw Plaintiff falling flat on his stomach and unable to move. Brackett stepped over Plaintiff's body and conducted a cell check, stepped back over Plaintiff, and left the cell. (*Id.*).

According to the evidence submitted, on June 26, 2014, while a pre-trial detainee at the HRYCI, Plaintiff and two other offenders refused to remove their blankets during a headcount on the housing unit. (D.I. 29 at Ex. A p.4). Prison standard operating procedures require the correctional officer to see "Living, Breath, Flesh." (*Id.*). Plaintiff testified that he did not comply with the order, and he received a disciplinary write-up after refusing to obey several direct commands to remove his blanket. (*Id.*; D.I. 29 at Ex. H p.23). Plaintiff was removed from his cell by the Quick Response Team, taken to

---

[1] Defendant John Polk was dismissed from the case on June 3, 2015. (D.I. 18).

the disciplinary housing unit, and charged with disorderly or threatening behavior. (D.I. 29 at Ex. A p.1).

On July 3, 2014, while still housed in the disciplinary unit, Plaintiff and another inmate were violently kicking their cell doors. (*Id.* at Ex. B). Plaintiff was kicking the door because he wanted his legal papers that were in his property bag. (*Id.*). Plaintiff admits that he kicked the door. (D.I. 29 at Ex. H p.41). A correctional officer went to the cell and saw damage to one of the cell doors. (D.I. 29 at Ex. B). Plaintiff was ordered to stop kicking the door. (*Id.*). Wright spoke to both inmates and told them their behavior would not be tolerated. (*Id.*). According to the disciplinary report, as Wright left to contact Lt. Emig, both inmates began kicking the doors again. (*Id.*). Emig ordered Wright to spray both inmates with Vexor if the kicking commenced. (*Id.*). Plaintiff testified that he was warned he would be maced if he kicked again. (D.I. 29 at Ex. H p.45). According to the disciplinary report, when both inmates again kicked the doors, Wright sprayed a two to three second burst of Vexor into each of their cells, and Plaintiff stopped kicking the door. (D.I. 29 at Ex. B). Plaintiff testified that he did not continue to kick the door and was maced "for nothing". (D.I. 29 at Ex. B; Ex. H at p. 45). Plaintiff was charged with disorderly or threatening behavior. (D.I. 29 at Ex. B). Medical records indicate that Plaintiff was seen on July 3, 2014 after he was sprayed and had no complaints except burning due to the spray. (D.I. 30 at p.6).

Plaintiff testified that the next morning, July 4, 2014, Brackett told Plaintiff to get out of bed and cuff up. (D.I. 29 at Ex. H p.85). Plaintiff testified that he tried to get out of bed and fell on the floor. (*Id.*). Plaintiff was seen by medical staff the next day. (D.I. 30, p.19). He told medical staff that he had noticed pain in the afternoon and evening

2

of July 3, 2014, and he was offered a sick call slip around 1:00 p.m. on July 4, 2014. (*Id.*). He was next seen on July 10, 2014. (*Id.* at pp.6 & 14). He complained of back pain on July 17, 2014, and was given medication to treat the pain. (*Id.*).

On July 9, 2014, Plaintiff was found guilty of disorderly or threatening behavior and sanctioned to isolated confinement for 45 days. (*Id.* at Ex. C). Plaintiff appealed, and the decision was reviewed and affirmed. (*Id.* at Ex. D).

## STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including

3

depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

Once Defendants filed their motion and Plaintiff had not timely responded, the Court issued an order for Plaintiff to file an answering brief. (D.I. 32). Plaintiff's opposition to Defendants' motion to dismiss, or in the alternative, for summary judgment consists of the sole statement, "Plaintiff hereby move[s] this Honorable Court to uphold the complaint pursuant [to] Fed. Rules Civ. Proc. Rule 15(a), 28 U.S.C.A." (D.I. 35). Attached to that sentence is Plaintiff's proposed order, which states Defendants used unjustified force, their conduct was unprofessional and inappropriate, and that Plaintiff wants the Court to see the lack of "a [conscience]" by the officer who stepped over his body without calling medical staff. (*Id.*).

4

## DISCUSSION

At the outset, the Court notes that Plaintiff offered no evidence to support his claims. "At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Because Plaintiff has not come forward with any evidence to support his claims, the Court will grant the motion for summary judgment.[2]

**Excessive Force**. Plaintiff's pretrial excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, __U.S.__, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). To demonstrate a due process violation, a detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The Court may consider, among other things: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.*

---

[2]Plaintiff proceeds *pro se*. Therefore, the Court will address his claims and review the evidence presented by Defendant.

5

Viewing the record in light of these factors, the Court finds that Plaintiff cannot prevail on his claim against Wright. Plaintiff and another inmate were kicking their cell doors and correctional officers had seen that the kicking was damaging at least one of the cell doors. Both inmates were warned to stop kicking but, according to Defendants, the kicking continued. Plaintiff admits that he kicked his door, but testified that he did not continue to kick the door. Plaintiff testified that one could hear the continued kicking, and the incident report indicates that correctional officers heard the kicking resume. It was not until the kicking resumed, and after the inmates had been warned, however, that Wright sprayed one short burst of Vexor into both cells. While there is a factual dispute about whether Plaintiff resumed kicking, it appears that there is no allegation that (assuming Plaintiff's version is correct, that is, that he did not resume kicking, which must be assumed in the summary judgment context) Wright knew that only the other inmate had resumed kicking. "Like if you don't know who is doing something, you shouldn't throw no mace nowhere." (D.I. 29 at Exh. H, p.81). Thus, there is no dispute that Wright sprayed the Vexor believing that Plaintiff had resumed kicking.

The evidence of record indicates that Plaintiff was medically examined after the incident and had no complaints other than burning from the spraying. Although it is not required that Plaintiff show he suffered more than a *de minimis* injury to maintain his excessive force claim, it is one factor the Court considers. *See Kingsley*, 135 S. Ct. at

2473. Here, the injuries of which Plaintiff complained immediately following the incident were nothing more than the normal aftereffects associated with the use of Vexor.[3]

The touchstone of a due process claim is whether the application of force was punitive. *See Kingsley*, 135 S. Ct. at 2473. Given the continued kicking, it cannot be said that the use of a short burst of mace was objectively unreasonable despite Plaintiff's protestations that he was not the inmate who failed to obey orders to stop kicking. The correctional officers heard the continued kicking and Wright took reasonable measures to ensure compliance with the correctional officers' direct orders and to prevent destruction of prison property. No reasonable jury could find that Wright's actions were punitive particularly in light of the fact that Plaintiff and the other inmate were warned of the consequences should they continue to kick the door. Accordingly, the Court will grant Defendants' motion for summary judgment.

**Medical Needs**. As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment affords Plaintiff a vehicle for his medical needs claim. *Bell v. Wolfish*, 441 U.S. at 535 n.16. When evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Natale v. Camden Cnty. Correc. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). To evaluate a medical needs claim, the Court determines if there is evidence of a serious medical need and acts or omissions by prison officials indicating deliberate indifference to those needs. *Id.* at 582.

---

[3]The Third Circuit has found that use of pepper-spray to subdue an uncooperative inmate, after verbal attempts fail, does not rise to the level of excessive force. *Passmore v. Ianello*, 528 F. App'x 144, 148 (3d Cir. 2013).

7

A "failure to provide adequate care . . . [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (1993). The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The evidence of record indicates that on the morning of the July 4, 2014, when Brackett told Plaintiff to get out of bed and cuff up, Plaintiff tried to get out of bed and fell on the floor. That afternoon, Plaintiff submitted a sick call slip and was seen by medical staff the next day and received treatment. Plaintiff was seen within a short time of seeking medical attention The evidence of record does not support a finding of deliberate indifference to Plaintiff's medical needs and, therefore, the Court will grant Defendants' motion for summary judgment.

## CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss and, in the alternative, for summary judgment. (D.I 28).

An appropriate order will be entered.

8